SERRALLÉS ET AL., PLAINTIFFS AND APPELLANTS, *v.* HEIRS OF SERRALLÉS, DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action of Revendication.

No. 2850.—Decided July 18, 1923.

REVENDICATION—EVIDENCE—CUMULATIVE EVIDENCE—ERROR.—The refusal to admit certain cumulative documentary evidence tending to show the payment of taxes, if error, was harmless.

ID.—ID.—ID.—ID.—Refusal to admit in evidence an undated letter which was not shown to be old and the signature to which was not proved to be genuine, was not error.

ID.—ID.—It was *Held:* That the record did not show that in weighing the evidence in favor of the defendant the court committed any fundamental error.

The facts are stated in the opinion.

*Mr. R. Martínez Nadal* for the appellants.

*Mr. F. Parra Capó* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This action involves the question of the ownership of a certain rural property called Las Hoyas situated in the Municipality of Santa Isabel.

The complaint alleges that Juan Serrallés purchased the said property in 1877 for the purpose of giving it, as he did, to his brother Marcial, the ancestor of the plaintiffs, "as a compensation for services rendered to him by his said brother." That the deed was originally drawn in the name of Marcial and the property was given the name of Regalo, but later it was executed in the name of Juan so that he,

who was in the best position to do so, might bring a certain action in connection with the area of the property. The complaint further alleges that Marcial was in the quiet and peaceful possession of the property as owner until his death in 1906, when his heirs, the plaintiffs, took possession of it and remained in possession until 1908, when they were evicted by virtue of a judgment of unlawful detainer.

The defendants answered that the property in question was purchased in fact by Juan Serrallés from José Cerdá, its owner, but that this purchase was made in 1881 instead of in 1877. They denied that the title was first taken in the name of Marcial or finally in the name of Juan for Marcial. They alleged that in order to avoid unpleasantness between his foremen and his brother Marcial regarding the care of the cattle, Juan acquired Las Hoyas and put his brother in possession of it so that he might keep his cattle thereon with no other obligation than to pay the taxes on the property. The title of ownership was always vested in Juan. When Juan died the property was awarded to his heirs, who later contributed it to the assets of the defendant society.

At the trial of the case oral and documentary evidence was examined and "from the result of the evidence as a whole" the court held that the law and the facts were in favor of the defendants and rendered judgment dismissing the complaint with the costs against the plaintiffs.

The plaintiffs took the present appeal, assigning the following errors as committed by the trial court: (1) In failing to file the statement of the case and opinion required by law; (2) in refusing to admit in evidence two notices dated in 1899 and issued by the Municipality of Santa Isabel; (3) in admitting in evidence the will of Juan Serrallés; (4) in admitting in evidence the deed of partition of his estate under the said will; (5) in refusing to admit in evidence a certain letter of Santiago Santiago; (6) in admitting in evidence certain tax receipts; (7) in weighing the evidence

generally in favor of the defendants, and (8) in giving to the participation of Marcial Serrallés in the partition of the estate of his brother Juan a probative value which it did not have.

Let us examine the first assignment. In addition to the judgment there is a so-called statement of the case and opinion. This document contains only a general conclusion. That was not the intention of the Legislature. Section 227 of the Code of Civil Procedure, as amended in 1911, prescribes that the judge "shall make out and file a brief statement in the case *setting out the facts as found by him and giving the reasons for his decision.*" (Italics ours.) This court has urged that the judges comply with the duty imposed upon them by law, but it has held also in the case of *Quiñones* v. *Vivoni*, 20 P. R. R. 458, among others, that failure to comply with that duty is no ground for a reversal of the judgment.

Let us consider the second assignment. The plaintiffs introduced in evidence two letters signed by Francisco Segarra and beginning with the words "Municipality of Santa Isabel." One is dated April 15, 1889, and the other August 16, 1889. Both are addressed to Marcial Serrallés and demand that he pay his taxes into the treasury.

To avoid a long technical discussion it may be admitted that this was error, but that admission is of no importance in disposing of this appeal. The error was not prejudicial. By means of better documentary evidence—a certificate of the Secretary of the Municipality of Santa Isabel—the plaintiffs showed that since 1880 and until the approval of the Hollander Act their ancestor as owner had paid the taxes assessed against the Las Hoyas property. The defendants admitted that the property was delivered to Marcial with the sole condition that he should pay the taxes. The letters in question were merely cumulative evidence.

In our opinion assignments Nos. 3 and 4 are without merit.

Both the will and the deed of partition were properly and duly admitted. This conclusion will be explained when we consider assignments Nos. 7 and 8 together.

The court did not err in refusing to admit an undated letter signed by José Santiago, notwithstanding the testimony of Mercedes Serrallés that she had found it among her father's papers. Her father died in 1906 and it does not appear when he received it. It was not shown that the document was an old one and in this case the signature should have been proved.

Nor did the court err in admitting certain receipts for taxes paid by the defendants on the property after the eviction. In point of fact that evidence is of no importance.

The discussion of the seventh and eighth assignments, and especially of the former; for the eighth is included in the seventh, will form the basis for the decision of this interesting controversy.

The appellants include a lengthy and able analysis of the evidence in their brief. No less able, although not so long, is the analysis of it by the defendants in their brief. The appellants contend that they alleged and proved that the property in question belongs to them by virtue of a purchase made for their father by the ancestor of the defendants, and that if this contention should be rejected, they have acquired it by prescription. There is some inconsistency between the allegations of the plaintiffs and what they attempted to prove by their witnesses at the trial. The complaint alleges a remunerative donation whereas the witnesses speak of a purchase made with Marcial's money, the title being taken by Juan to be transferred at the proper time. In the partition of the estate left by Marcial at the time of his death the property in question was made to appear as acquired by Marcial and his wife in 1883 by inheritance from their minor daughter Juana who had acquired it by a donation made to her by her uncle and godfather, Juan Serrallés.

Having made these preliminary observations, to which the defendants call attention in their brief, let us see what was the outcome of the evidence.

There is no question about the identity of the property. The property sued for by the plaintiffs is in the possession of the defendants.

The defendants admit that the ancestor of the plaintiffs, and subsequently they, were in possession of the property from 1881 until 1908 when the plaintiffs were evicted. And here the conflict arises on two essential points: The beginning of the possession and its nature.

The oldest documentary evidence in this case is the deed of August 22, 1881, whereby Juan Serrallés purchased the property in question from José Cerdá. No reference, direct or indirect, is made in the said deed to Marcial Serrallés. Some years passed. Juan died and the property was included in the inventory of his estate and awarded to his heirs. The heirs later contributed it to the assests of the defendant society. By virtue of that chain of titles evidenced by public instruments the defendants are now in possession of the property claimed by the plaintiffs as theirs.

What evidence have the plaintiffs produced in support of this claim? They themselves have classified it as follows: Oral, documentary and admissions. Let us examine their oral evidence.

Juan Príncipe testified in substance that the property in litigation was purchased in the early part of the year 1877 for Sebastián Marcial Serrallés, who immediately entered into possession thereof pending the execution of the deed in his favor and the settlement of certain questions; that the sale was really made by José Quesada, but before the deed was made out Marcial Serrallés, who was already in possession of the property, found that there was a shortage of some forty acres, and as he was addicted to drink, somewhat aggressive in character and of

little mental capacity, Quesada could not reach an understanding with him and so transferred the title to José Cerdá, but the latter met with the same obstacles due to the character and intolerance of Marcial and also was unable to execute the deed, whereupon Juan Príncipe, the witness, who had acted as agent in the sale, had to intervene in the matter and went to see Juan Serrallés, to whom he explained the difficulties that they were having with Marcial in the execution of the deed. Juan Serrallés said to him: "You know Marcial, so do not pay any attention to him. Make the deed to me and I will pay the $2,000, as I have some of Marcial's money." That this was then done and José Cerdá executed the deed in favor of Juan; that from the year 1877 until the execution of the deed and the legalization of the transaction at least three or four years elapsed; that Marcial took charge of the property and entered into the possession of it as owner in the year 1877, and that since that time the witness had seen him performing acts of ownership without the interference of anybody and without any intervention on the part of Juan Serrallés.

Juan Bota testified that in the year 1877 he came from Spain and was employed as second foreman by Juan Serrallés on his plantations Mercedita, La Fé, Laurel and others; that later he was promoted to first foreman and still later, when manager Pedro Salas left, Juan Serrallés appointed him general manager; that he was in the employ of Serrallés for sixteen years; that since the year 1877 he always heard Juan Serrallés say in conversations that the plantation at Las Hoyas, ward of Descalabrado of Santa Isabel, belonged to his brother Sebastián Marcial Serrallés; that Juan Serrallés frequently so stated in conversations with his foremen at the meals that they took together; that he recalled that Serrallés once made this statement in the presence of Eduardo Wellenkamp, his general attorney in fact, of Pedro Salas, his field manager, and of Perico Fournier, his book-

keeper; that during the sixteen years that he was in the employ of Juan Serrallés as foreman and general manager he never had anything to do with, nor received orders from Juan to interfere with, the Las Hoyas property belonging to his brother Marcial; that as general manager he was for several years in charge of the management of the cultivation and in control of all of the properties of Juan Serrallés and never had anything to do with the property of Marcial; that on the other hand he managed a plantation called Rio Cañas on the Descalabrado river of Santa Isabel and separated by the river from Marcial's property and remembers perfectly that one day while riding over this Río Cañas property on horseback with Juan the latter said to him: "Look; that is the property of my brother Marcial." That then they crossed the river and looked at it and he remembers that it adjoined a property of one Salich and another of Pedro María Descartes; that he knows that Marcial Serrallés was the only person who performed acts of ownership on that property without objection on the part of anybody; that he does not know whether that property was purchased by Marcial or was a gift made to him by Juan Serrallés, but that he does know that the latter said that it belonged to his brother Marcial.

Witness Alers testified that he was in the employ of Marcial Serrallés for more than twenty years and that the latter was regarded as the sole owner who managed the property, sold the products, paid the laborers and supervised the cultivation, without rendering accounts to anybody and without being interefered with by anybody in its possession; that he never saw Juan Serrallés or his foremen or employees inspect, manage, or give any orders on the said property, and that this state of affairs continued during the life of Marcial and during the two years after his death that the property was in the quiet, public, peaceful and uninterrupted possession as owners of his son Marcialito, the father of the

minor plaintiff, and his daughter Mercedes, the other plaintiff, until the year 1908, when for the first time the witness saw Canuto del Valle, an employee of the heirs of Juan Serrallés, on the road leading to said property and was told by him that they were going to evict him immediately from the property because he was entrusted with its management by the children of Marcial.

Witness Salich testified that he was 74 years of age; that when he was about 30 years of age he had gone to do some work on a property adjoining the property sought to be recovered and that Marcial Serrallés was already in the quiet and peaceful possession of the property as owner.

Other witnesses testified to the same effect, but the testimony recited is the most important and is expressly relied on by the appellants in arguing the seventh assignment which we are considering. As admissions those of Juan Eugenio Serrallés and Eduardo Wellenkamp were submitted. The testimony of plaintiff Mercedes Serrallés, corroborated by that of her seamstress, Martina Ramírez, shows that about the year 1908, while the action of unlawful detainer was pending, Juan Eugenio Serrallés, a member of the defendant society, visited Mercedes, and when the latter complained to him about the matter he said that they were taking the property from her because they knew that she was going to sell it and squander the money, but that he knew that it belonged to her. The testimony of Manuel Vidal Sánchez shows that when this witness went to see Wellenkamp, the general attorney in fact of the heirs of Serrallés, about the settlement of the estate of Marcial's wife, he said: "Tell Marcial not to worry or be afraid, for as soon as I get well I will transfer to him the title deed of Las Hoyas, for the heirs of Juan Serrallés know that the property does not belong to them but to Marcial."

As regards the payment of taxes, a certificate issued in

1914 by the Secretary of the Municipality of Santa Isabel was introduced, reading in so far as pertinent as follows:

"I certify that from the year 1880 up to the enactment of the Hollander Act Marcial Serrallés y Colón has paid as owner the taxes assessed on a property of 241 acres situated in this municipality, ward of Descalabrado, at the place called Las Hoyas, the name of said property being Regalo."

And another certificate of the Acting Treasurer of Porto Rico, B. R. Dix, as follows:

"That as shown by the records of this Department of the assessments of property for the fiscal year 1901–1902, Marcial Serrallés has declared that he is the owner of the following properties in the ward of Descalabrado, Municipality of Santa Isabel: 'Rural property of 151 acres of land valued at $3,000, a house valued at $200 and $1,152 in personal property, making a total of $4,352.' The schedule is signed 'S. M. Serrallés' and the taxes assessed against him for the year were $43.52, which amount has been paid, as evidenced by Receipt No. 50 of the fiscal year 1901–1902."

And finally a letter was introduced reading as follows:

"Mr. S. M. Serrallés, Plantation Mercedita, March 17, 1889.—Dear brother: I arose this morning relieved of my throat trouble. I told Eduardo that as I was leaving for Santo Domingo he was to make out the deed of Las Hoyas to you; he knows that the said property was purchased for you. I have received the corn that you sent.—Your brother Juan."

If credit is given to the evidence of the plaintiffs it must follow that the property in question belongs to them. Was the district court biased in weighing that evidence? Did it commit manifest error in adjusting the conflict between that evidence and the title deeds submitted by the defendant society in its favor?

Analyzed alone, the evidence of the plaintiffs leaves a certain doubt in the mind of the court. There is one fact that cannot be overcome: The deed of purchase of the property by Juan Serrallés in 1881. As the possession of the

plaintiffs terminated in 1908, the year 1881 was not sufficiently remote to include the thirty years required for extraordinary prescription. It was necessary to go farther back and Príncipe testified that the property was purchased in 1877. Bota said that he arrived from Spain in 1877 and that from 1877 he had heard Juan state in conversations that the property belonged to Marcial. Salich, who is 74 years of age, testified that at the age of thirty he noticed that Marcial was in possession of the property as owner. The explanation given by Príncipe is not satisfactory. It can not be conceived how Marcial could enter into possession in 1877 without making any payment and remain in possession under such circumstances until 1881, Quesada, the grantor, being compelled, in order to overcome the difficulty of reaching an understanding with Marcial, to transfer the title to Cerdá, and Cerdá, being likewise unable to consummate an arrangement with Marcial, finding himself obliged to appeal to Juan, who thereupon paid, four years later, the purchase price of the property. We have been unable to find in the record a scintilla of evidence regarding the action to have been taken by Juan in connection with the area of the property, the only reason for putting the property in his name. The date of 1877 is therefore suspicious, or at least uncertain. The certificate of the Secretary of the Municipality of Santa Isabel relative to the payment of taxes does not go farther back than 1880. We can well understand why the court absolutely rejected the theory of extraordinary prescription.

Let us consider the remunerative donation or confidential purchase by Juan for Marcial with Marcial's money.

Although contradicted by evidence of the defendants, it may be conceded that in 1881 Marcial took possession of the property, paid the taxes as owner and appeared before the public in that character. Is this, taken in connection with the admissions of Juan Eugenio Serrallés and Eduardo Wellenkamp and the letter of Juan Serrallés, sufficient ground

for the conclusion that Marcial not only appeared to be, but in point of fact really was, the owner of the property?

The payment of taxes is not sufficient of itself to prove ownership; nor is possession as owner without color of title, except after thirty years.

Let us consider the admissions. It is very strange that during the pendency of the action of unlawful detainer, which presupposes a conflict of interest among the members of a family generally antagonistic, that Juan Eugenio Serrallés should visit his cousin so frequently, as she testified that he did. At the time of the trial Juan Eugenio Serrallés was living, but was absent from Porto Rico. As regards the admission of Wellenkamp, who had died, we think it well to reproduce the criticism of it by the attorney for the defendant in his brief. It reads as follows:

"We take it that the court will have understood from the testimony of Manuel Vidal and Mercedes Serrallés that the interest of this witness is somewhat more than that of a mere witness. He was a legal business broker and had his office in the same building as the attorney for the plaintiffs. He was the counsellor of Marcial. He had the custody of the documentary evidence for safekeeping. He was engaged in searching for and arranging certain important documents in connection with the case, etc. Therefore, his testimony should be received with caution, for it is human to err and often errors are made in good faith, superinduced by an ardent desire for the success of an enterprise. In this way matters arise that are not easy to understand. For example, according to the testimony of Vidal Sánchez (page 64 *et seq.* of the transcript), when Marcial's wife died Marcial wanted to settle her estate so that her children might receive the shares belonging to them and told Vidal Sánchez to get from Wellenkamp the title deed to the said property. Wellenkamp delayed the matter until his health should improve and sent a message to Marcial 'not to worry, for the heirs know that the property belongs to him.' But the fact is that time went by, Wellenkamp died and later Marcial died and the settlement of the estate in which Marcial had so much interest was never made. (Certificate of the General Keeper of Archives at page 13 *et seq.* of the

transcript) wherein it is shown that when the heirs of Marcial settled his estate they said that Marcial and his wife acquired that property by inheritance from their daughter to whom Juan had given it and that upon the death of his wife the two minor heirs transferred it to Marcial for the payment of debts, but none of these transfers was shown by a written title, which indicates that there was no proceeding in which such a transfer was made. This instrument was executed before Matienzo where Vidal Sánchez was employed and he was undoubtedly able through conversations with Wellenkamp and Marcial to obtain information regarding the real origin of the property now shown to be distinct from that referred to in the said instrument.''

The letter written by Juan Serrallés is the only evidence that has caused us to hesitate in this case. Possibly the force of it might compel us to discard the doubts and suspicions arising from the examination of all of the testimony of the witnesses for the plaintiffs, but the voice of Juan is heard in no uncertain tones not only in that letter but also in his will. Juan, who was wealthy, did not forget his brother Marcial, whose fortune was small. He appointed him executor in his will and bequeathed and devised to him ''all of the sums of money that he might be owing to him at the time of his death as well as the Paraiso property in the ward of Real and separated from the other lands belonging to him, excluding the water rights granted to said lands for irrigation, such water rights now belonging to the Laurel, Mercedita, and Fe properties,'' and further directed his executors and heirs ''to assist his said brother in whatever way possible and so far as the state of his capital might permit.'' And it can not be conceived that a man such as the evidence shows Juan Serrallés to have been, who remembered at the time of making a short trip to Santo Domingo in 1889 that he had left pending the transfer of the deed to Las Hoyas, would have forgotten to comply with that duty towards his brother at the impressive moment in which he made a disposition of his prop-

erty to take effect after his death and at a time when his mind was concentrated on his said brother and he bequeathed to him the amount owing by him and the Paraiso property, directing his heirs to continue to assist him.

In purchasing and delivering the Las Hoyas property to his brother it was perhaps also the intention of Juan to transfer the title of ownership to him at some future date. Perhaps he revealed that intention when in 1889 he wrote the letter introduced in evidence. Nevertheless, the fact is that he never went so far as to give expression to his intention by an act of real legal value and when the time arrived for him to donate some property to his brother he selected the Paraiso property for that purpose.

But the evidence introduced by the defendants has a still wider significance. Not only was Marcial named executor, but as such executor he took part in the proceedings to settle the estate of Juan and in those proceedings, sanctioned by the signature of Marcial, the Las Hoyas property was included among the properties inventoried as belonging to the estate.

We agree that this fact alone would not be an absolute bar to the establishment of this claim, but joined to the other circumstances that we have analyzed it impels us to hold that the conclusion reached by the district court is, in our opinion, based upon a fair and intelligent consideration of the pleadings and the evidence.

The seventh and eighth assignments have no merit and the judgment appealed from should be affirmed in all of its parts.

*Affirmed.*

Justices Wolf, Aldrey and Franco Soto concurred.
Mr. Justice Hutchison concurred in the judgment.